UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br><br>v.<br><br>THE HERTZ CORPORATION<br>Defendant. | Case No. 1:21-mc-00010<br>(Originally Civil Action No. 145-364) |

**THE UNITED STATES' MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION TO TERMINATE A LEGACY ANTITRUST JUDGMENT**

Plaintiff, United States of America ("United States"), respectfully submits this memorandum of law in support of its motion to terminate the legacy antitrust judgment in the above-captioned antitrust case pursuant to Rule 60(b) of the Federal Rules of Civil Procedure. The judgment was entered by this Court in 1960, modified in 1965 and 1967 and is over 60 years old. The United States has concluded that because of its age and changed circumstances since its entry, the judgment no longer serves to protect competition. The United States gave the public notice and the opportunity to comment on its intent to seek termination of this judgment; it received no comments opposing termination.[1] For this and other reasons explained below, the United States requests that the judgment be terminated.

---

[1] The Antitrust Division contacted The Hertz Corporation regarding this motion, and the company had no objection to it. Hertz continues to operate today as the second-largest car rental company in the United States. *See Declaration of Eyitayo St. Matthew-Daniel.*

**I.     BACKGROUND**

From 1890, when the antitrust laws were first enacted, until the late 1970s, the United States frequently sought entry of antitrust judgments whose terms never expired.[2] Such perpetual judgments were the norm until 1979, when the Antitrust Division of the United States Department of Justice ("Antitrust Division") adopted the practice of including a ten-year term limit in nearly all of its antitrust judgments. Perpetual judgments entered before the policy change, however, remain in effect indefinitely unless a court terminates them. Although a defendant may move a court to terminate a perpetual judgment, few defendants have done so. There are many possible reasons for this, including that defendants may not have been willing to bear the costs and time required to seek termination, defendants may have lost track of decades-old judgments, individual defendants may have passed away, or company defendants may have gone out of business. As a result, hundreds of these legacy judgments remain open on the dockets of courts around the country.

The Antitrust Division's Judgment Termination Initiative seeks to review all its outstanding perpetual antitrust judgments and, when appropriate, seek termination of legacy judgments. The Antitrust Division described the initiative in a statement published in the Federal Register.[3] In addition, the Antitrust Division established a website to keep the public informed of its efforts to terminate perpetual judgments that no longer serve to protect

---

[2] The primary antitrust laws are the Sherman Act, 15 U.S.C. §§ 1–7, and the Clayton Act, 15 U.S.C. §§ 12–27. The judgment the United States seeks to terminate with this motion concerns violations of the Clayton Act § 7.

[3] Department of Justice's Initiative to Seek Termination of Legacy Antitrust Judgments, 83 Fed. Reg. 19,837 (May 4, 2018), https://www.gpo.gov/fdsys/granule/FR-2018-05-04/2018-09461.

2

competition.[4] The United States believes that outstanding perpetual antitrust judgments presumptively should be terminated; nevertheless, the Antitrust Division is examining each judgment to ensure that it is suitable for termination. The Antitrust Division is giving the public notice of—and the opportunity to comment on—its intention to seek termination of perpetual judgments.

In brief, the process the United States is following to determine whether to move to terminate a perpetual antitrust judgment is as follows:

- The Antitrust Division reviews each perpetual judgment to determine whether it no longer serves to protect competition such that termination would be appropriate.

- If the Antitrust Division determines a judgment is suitable for termination, it posts the case name and the judgment on its public Judgment Termination Initiative website, https://www.justice.gov/atr/JudgmentTermination.

- The public is given the opportunity to comment on each proposed termination within thirty days of the date the case name and judgment are posted to the public website.

- Following review of any public comments received, the Antitrust Division determines whether the judgment still warrants termination; if so, the United States moves to terminate it.

The United States followed this process for the above-captioned judgment.[5]

The remainder of this motion is organized as follows: Section II describes the Court's jurisdiction to terminate the judgment and the applicable legal standards for terminating the judgment. Section III demonstrates that perpetual judgments rarely serve to protect competition and those that are more than ten years old presumptively should be terminated. Section III also

---

[4] *Judgment Termination Initiative*, U.S. DEP'T OF JUSTICE, https://www.justice.gov/atr/JudgmentTermination.

[5] The United States has followed this process to move almost 80 district courts to terminate legacy antitrust judgments. To date, all districts considering these matters, including the Southern District of New York, have terminated legacy judgments upon motion, and no court has denied a motion to terminate. *See infra* at 6-7.

discusses specific circumstances justifying termination of this judgement. Section IV concludes. Exhibit A attaches a copy of the judgment that the United States seeks to terminate with this motion. A proposed order terminating the judgment also accompanies this motion.

## II. APPLICABLE LEGAL STANDARDS FOR TERMINATING THE JUDGMENT

This Court has jurisdiction and authority to terminate the judgment. The judgment provides that the Court retains jurisdiction. *See* Exh. A at Section XI. In addition, the Federal Rules of Civil Procedure grant the Court authority to terminate the judgment. According to Rule 60(b)(5) and 60(b)(6), "[o]n motion and just terms, the court may relieve a party . . . from a final judgment . . . (5) [when] applying it prospectively is no longer equitable; or (6) for any other reason that justifies relief."[6] Fed. R. Civ. P. 60(b)(5)–(6); *accord Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 441 (2004) (explaining that Rule 60(b)(5) "encompasses the traditional power of a court of equity to modify its decree in light of changed circumstances" and that "district courts should apply a 'flexible standard' to the modification of consent decrees when a significant change in facts or law warrants their amendment") (citation omitted); *see also United States v. Eastman Kodak Co.*, 63 F.3d 95, 101 (2d Cir. 1995) ("[T]he power of a court to modify or terminate a consent decree is, at bottom, guided by equitable considerations.").

---

[6] Although the Tunney Act governs procedures for judicial approval of consent decrees filed by the Antitrust Division, by its terms, it is not applicable to consent decree termination proceedings. Nevertheless, the Second Circuit has held that the Tunney Act can provide "useful guidance" to the court with respect to decree terminations. *See United States v. Am. Cyanamid Co.*, 719 F.2d 558, 565 n.7 (2d Cir. 1983). The Tunney Act does not require a court to conduct an evidentiary hearing, 15 U.S.C. § 16(e)(2). As described in this memorandum, in light of the 60 years that have passed since this Court entered this final judgment and the changed circumstances since its entry, the United States does not believe that it is necessary for this Court to make an extensive inquiry into the facts of this final judgment in order to terminate it under Fed. R. Civ. P. 60(b)(5) or (b)(6).

4

Where, as here, the United States seeks to terminate an antitrust judgment, the court, exercising judicial supervision, should approve a decree termination when the United States has provided a reasonable explanation to support the conclusion that termination is consistent with the public interest. *See United States v. International Bus. Machines Corp.*, 163 F.3d 737, 740 (2d Cir. 1998) ("*IBM*"); *United States v. Loew's, Inc.*, 783 F. Supp. 211, 213 (S.D.N.Y. 1992); *United States v. Columbia Artists Mgmt., Inc.*, 662 F. Supp. 865, 869–70 (S.D.N.Y. 1987); *see also United States v. W. Elec. Co.*, 900 F.2d 283, 307 (D.C. Cir. 1990) (a court should approve a termination "so long as the resulting array of rights and obligations is within the zone of settlements consonant with the public interest today"); *United States v. W. Elec. Co.*, 993 F.2d 1572, 1576–77 (D.C. Cir. 1993) (under "deferential" public interest test, a court should accept a consensual termination of decree restrictions that the United States "reasonably regarded as advancing the public interest"; it is "not up to the court to reject an agreed-upon change simply because the proposal diverge[s] from its view of the public interest"; rather, a court "may reject an uncontested termination only if it has exceptional confidence that adverse antitrust consequences will result.").

The purposes behind the antitrust laws inform the meaning of the term "public interest." *See IBM*, 163 F.3d at 740. This Court's "public interest determination must be based on the same analysis that [it] would use to evaluate the underlying violation" – that is, whether the present marketplace is such that the antitrust violation alleged in the complaint would be unlikely to recur following the decree's termination. *Id.*; *see also United States v. Am. Cyanamid Co.*, 719 F.2d 558, 565 (2d Cir. 1983). That evaluation necessarily is "forward-looking and probabilistic . . . focused on the *likelihood* of a potential future violation, rather than the mere possibility of a violation." *IBM*, 163 F.3d at 742 (emphasis added). "[T]he Department of

5

Justice has broad discretion in controlling government antitrust litigation"; thus, "[a]bsent a showing of corrupt failure of the government to discharge its duty, the Court, in making its public interest finding, should…carefully consider the explanations of the government. . . ." *Loew's*, 783 F. Supp. at 213–14 (internal citation omitted); *see also United States v. Paramount, Inc.,* 19 Misc. 544 (AT), 2020 WL 4573069 at *3 (S.D.N.Y. Aug. 7, 2020) (same principle). "This Court may not substitute its opinions or views" for the government's when "the government consents to the termination of a decree." *Loew's*, 783 F. Supp. at 214 (internal citation omitted).

In that regard, if the government reasonably explains why there is "no current need" for a decree, termination would serve the public interest. *Id.* at 213–14 (quoting *N. Pac. Ry.* v. *United States*, 356 U.S. 1, 4 (1958)). In *Loew's*, for example, the Court reasoned that "in view of the changed environment in which the [40-year-old] Judgment now operates, there is no persuasive reason for maintaining the Judgment and subjecting Loews to restrictions that do not bind other" market participants. *Id.* at 215. Recently, the *Paramount* decision reiterated how changes in law and fact can justify a termination in the public interest: "Because changes in antitrust law and administration have diminished the importance of the Decrees' restrictions, while still providing protections that will keep the probability of future violations low, the Court finds that termination of the Decrees is in the public interest." *Paramount*, 2020 WL 4573069 at *7.

Given its jurisdiction and its authority, the Court may terminate a judgment for any reason that justifies relief, including that the judgment is no longer in the public interest and no longer serves its original purpose of protecting competition. This result is consistent with other courts' actions across the country when analyzing Judgment Termination Initiative motions.

Seventy-nine districts have terminated about 800 legacy judgments upon similar motion. The courts span all judicial districts and include other courts both within this District and within this Circuit. *See, e.g.,* Order Terminating Final Judgment, *United States v. Wool Institute, Inc.,* No. 20-mc-00029-LGS (S.D.N.Y. Jan. 29, 2020) (terminating one judgment); Order Terminating Final Judgment, *United States v. Robert E. Miller, Inc.*, No. 20-mc-00020-GHW (S.D.N.Y. Jan. 14, 2020), ECF No. 2 (terminating one judgment); Order, *United States v. A. Schrader's Son, Inc.*, No. 19-mc-01438-PKC (E.D.N.Y. June 24, 2019), ECF No. 2 (terminating 14 judgments); Order Terminating Final Judgments, *United States v. Alden Paper Co.*, No. 19-mc-00015-DNH (N.D.N.Y. Apr. 29, 2019), ECF No. 2 (terminating five judgments); Order Terminating Final Judgments, *United States v. New Departure Mfg. Co.,* No. 19-mc-00016-LJV (W.D.N.Y. June 11, 2019), ECF No. 2 (terminating 12 judgments); Order, *United States v. County Nat'l Bank of Bennington*, No. 19-mc-00032-GWC (D. Vt. Mar. 21, 2019), ECF No. 2 (terminating one judgment).

In reviewing legacy judgments that have been the subject of the United States' motions to terminate, courts have found termination to be in the public interest for a variety of reasons, including the age of the judgment, defendant's corporate status, changed circumstances over time in markets, and lack of need due to the judgment-duplicating prohibitions established under current antitrust laws. *See, e.g., Paramount,* 2020 WL 4573069 at *7 ("Antitrust laws, and their faithful enforcement, weigh in favor of the Court's finding that there is a low likelihood of a potential future violation absent the Decrees."); Order, *United States v. Coal Dealers Ass'n of Cal.,* Case No. 19-mc-80147-JST (N.D. Cal. July 19, 2019), ECF. No. 5 (terminating 37 judgments because of their age, lack of need due to the judgments' duplication of prohibitions under current antitrust laws, and changed circumstances; the court noted that "Given that this

motion seeks to terminate judgments entered between 120 and 32 years ago and that many of the affected entities no longer exist, the Court finds the government's public comment initiative provided adequate notice under the circumstances" and that service was not necessary); *United States v. Cont'l Grain Co.*, No. 70-CV-6733, 2019 WL 2323875, at *2 (E. D. Tex. May 30, 2019) (terminating judgment under Fed. R. Civ. P. 60(b)(5)); Order at 6, *United States v. Kahn's Bakery, Inc.*, No. 75-cv-00106-RPM (W.D. Tex. Mar. 26, 2019), ECF No. 3 (terminating judgment because it "no longer serves to protect competition"); Order at 5, *United States v. V.I. Gift and Fashion Shop Ass'n*, No. 69-cv-00295-CVG-RM (D.V.I. June 11, 2019), ECF No. 4 (terminating judgments, in part, because the prohibition on price fixing is duplicative of the antitrust laws and the representation by the United States that a corporate defendant no longer exists); Order at 5, *United States v. Anheuser-Busch,* No. 60-cv-08906-KMM (S.D. Fla. July 19, 2019) (terminating judgments, in part, because of the "changes in factual and legal landscape" since their entry). Exhibit B contains the orders specifically cited above. Termination of the final judgment in this case is warranted for similar reasons as in these cases.

### III. ARGUMENT

This over sixty-year-old judgment no longer serves to protect competition, and it is in the public interest to terminate it. Under the provisions of the judgment, The Hertz Corporation ("Hertz") was prohibited from using exclusion concession contracts for five years, enjoined from acquiring any passenger, car, or truck rental firms for three years, and restricted from enforcing many of its acquisition agreements' non-competition clauses. Additionally, the judgment ordered Hertz to, within five years or the judgment, divest two company acquisitions: Couture Rent A Car and a New York City truck leasing business. The latter divestiture was modified in 1965 so Hertz could divest itself of the truck rental business it had previously divested, but

8

which was re-acquired through enforcement of a security interest obtained as part of the original sale, and again in 1967 to substitute a ten-year ban on future truck leasing acquisitions in the New York City area in lieu of an impractical truck rental divestiture.

It is appropriate to terminate the judgment because it no longer serves its original purpose of protecting competition. The United States believes that this perpetual judgment presumptively should be terminated because its age alone suggests it no longer protects competition. Other reasons, however, also weigh in favor termination, most notably that all operative provisions of the decree have been complied with or expired, and thus the judgment has no remaining effect in place. Under such circumstances, the Court may terminate the judgment pursuant to Rule 60(b)(5) or (b)(6) of the Federal Rules of Civil Procedure.

### A. The Judgment Presumptively Should Be Terminated Because of Its Age

Permanent antitrust injunctions rarely serve to protect competition. The experience of the United States in enforcing the antitrust laws has shown that markets almost always evolve over time in response to competitive and technological changes. These changes may make the prohibitions of decades-old judgments either irrelevant to, or inconsistent with, competition. These considerations, among others, led the Antitrust Division in 1979 to establish its policy of generally including in each judgment a term automatically terminating the judgment after no more than ten years.[7] This judgment—which is over sixty-years-old—presumptively should be terminated for the reasons that led the Antitrust Division to adopt its 1979 policy of generally limiting judgments to a term of ten years.

---

[7] U.S. DEP'T OF JUSTICE, ANTITRUST DIVISION MANUAL at III-147 (5th ed. 2008), https://www.justice.gov/atr/division-manual.

## B. The Judgment Is No Longer Needed to Protect Competition

In addition to age, other reasons weigh heavily in favor of terminating the judgment. Based on its examination, the Antitrust Division has determined that the judgment should be terminated for the following reasons:

- All requirements of the judgment have been met such that it has been satisfied in full. In such a case, termination of the judgment is a housekeeping action: it will allow the Court to clear its docket of a judgment that should have been terminated long ago but for the failure to include a term automatically terminating it upon satisfaction of its terms.

- The judgment, as modified, no longer serves a purpose. The purpose of the judgment has been replaced by the Hart-Scott-Rodino Antitrust Improvements Act of 1976, 15 U.S.C. § 18a, which requires companies to notify the Department of Justice and the Federal Trade Commission when proposed transactions meet a certain threshold. Therefore, the judgment should be terminated.

Each of these reasons support the termination of this judgment.

## C. There Has Been No Public Opposition to Termination

The United States has provided adequate notice to the public regarding its intent to seek termination of the judgment. On April 25, 2018, the Antitrust Division issued a press release announcing its efforts to review and terminate legacy antitrust judgments, and noting that it would begin its efforts by proposing to terminate judgments entered by the federal district courts in Washington, D.C., and Alexandria, Virginia.[8] On August 2, 2019, the Antitrust Division listed the judgment in the above-captioned case on its public website, describing its intent to move to terminate the judgment.[9] The notice identified the case, linked to the judgment, and

---

[8] Press Release, Department of Justice, Department of Justice Announces Initiative to Terminate "Legacy" Antitrust Judgments, (April 25, 2018), https://www.justice.gov/opa/pr/department-justice-announces-initiative-terminate-legacy-antitrust-judgments.

[9] https://www.justice.gov/atr/JudgmentTermination, link titled "View Judgments Proposed for Termination in Southern District of New York."

10

invited public comment. In the above-captioned case, however, the Division received no comments concerning the judgment.

**IV.    CONCLUSION**

For the foregoing reasons, the United States believes termination of the judgment in the above-captioned case is appropriate, and respectfully requests that the Court enter an order terminating it.

                                                Respectfully submitted,

Dated: January 14th, 2021                   */s/ Eyitayo St. Matthew-Daniel*
**Eyitayo St. Matthew-Daniel**
Assistant Chief, New York Office
United States Department of Justice
26 Federal Plaza, Suite 3630
New York, NY 10278
Telephone: (202) 677-0370
Email: Eyitayo.St.Matthew-Daniel@usdoj.gov